UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03-cr-29-MOC-DCK-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| TIMOTHY MASSEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant Timothy Massey's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 100). The Fourth Circuit Court of Appeals vacated this Court's earlier denial of Defendant's motion and remanded to this Court for further proceedings. (Doc. No. 109). Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A). The Government has responded in opposition to the motion. For the following reasons, Defendant's motion for compassionate release is again denied.

I.  BACKGROUND

In February of 2003, Defendant was an inmate in the Rowan County jail, when Deputy William Connell placed Defendant and fellow inmate Timothy Cloud into a van for transport to the Mecklenburg County Detention Center. (WDNC Case No. 3:03CR29, Doc. No. 108 at ¶ 6). Defendant and Cloud were handcuffed and shackled together. (Id.). As Connell exited the interstate in Charlotte, Cloud, who appeared to be sick, complained that he felt like he needed to vomit. (Id.). Connell placed his service weapon under the driver's seat of the van and walked around to let Defendant and Cloud out of the van so that Cloud could vomit. (Id.). As Connell opened the door of the van, however, Defendant and Cloud attacked Connell, knocking him to

the ground. (Id.). Cloud held Connell down while Defendant took the handcuff key from the deputy's shirt pocket. (Id.). Connell struggled with the inmates, and Cloud bit Connell on the left bicep. (Id.). Defendant took Connell's "OC Spray" and retrieved Connell's service weapon from under the driver's seat. (Id.). Defendant and Cloud then fled the scene. (Id.).

Defendant and Cloud ran to a nearby auto garage, where Defendant grabbed Brandon Hartsell around the neck and held the gun to Hartsell's head while demanding the keys' to Hartsell's car, threatening that he would kill Hartsell if Hartsell gave Defendant the wrong keys. (Id., Doc. No. 108 at ¶¶ 8–9). Defendant and Cloud drove off in Hartsell's car. (Id. at ¶ 8). After police located the car in an apartment complex, they searched for and found Defendant hiding inside of one of the apartments. (Id.). Cloud eventually turned himself in, and Defendant's mother returned the stolen service weapon to the police. (Id. at ¶¶ 11–14).

A federal grand jury indicted Defendant and charged him with carjacking, 18 U.S.C. § 2119; brandishing a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c); and possessing a stolen firearm, 18 U.S.C. § 922(j). (Id., Doc. No. 4). Defendant entered into a plea agreement with the United States and pleaded guilty to all three offenses. (Id., Doc. No. 25 at ¶ 1).

This Court's probation office submitted a presentence report and calculated a total offense level of 23 for the carjacking and stolen-firearm offenses. (Id., Doc. No. 108 at ¶ 42). Based on a total offense level of 23 and a criminal-history category of III, the Sentencing Guidelines called for a sentence of between 57 and 71 months in prison for the stolen-firearm and carjacking offenses. (Id. at ¶ 78). Defendant faced a consecutive sentence of at least 84 months in prison for the section 924(c) firearm offense. (Id. at ¶ 79). This Court sentenced

Defendant to 12 months in prison for the carjacking and stolen firearm offenses and to a consecutive term of 84 months in prison for the section 924(c) firearm offense, for an aggregate sentence of 96 months in prison. (Id., Doc. No. 55 at 2). This Court also sentenced Defendant to 5 years of supervised release. (Id. at 3). Defendant served his custodial sentence, and his supervised release commenced in April of 2010. (Id., Doc. No. 62 at 1).

Less than a year later, in March of 2011, this Court's probation office petitioned this Court to revoke Defendant's supervised release because he had tested positive for marijuana and twice tested positive for cocaine. (Id.). Defendant had also failed to report for required drug tests and was twice terminated from his court-ordered substance-abuse treatment programs. (Id. at 1–2). This Court sentenced Defendant to 5 months in prison and to 36 months of supervised release. (Id., Doc. No. 69 at 2–3).

Defendant served that custodial sentence, and his supervised release recommenced in November of 2011. (Id., Doc. No. 72 at 1). In May of 2012, police officers stopped Defendant's car in Charlotte, North Carolina, because the car did not have a rearview mirror. (WDNC Case No. 3:13CR224, Doc. No. 22 at ¶ 5). After smelling marijuana, police searched Defendant's car and found 174 grams of marijuana and a loaded nine-millimeter pistol. (Id. at ¶¶ 6–9). Defendant admitted that he knew the marijuana and pistol were inside the car. (Id. at ¶ 8).

A federal grand jury indicted Defendant and charged him with possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1); possessing with intent to distribute marijuana, 18 U.S.C. § 841(a)(1); and possessing a firearm in furtherance of drug-trafficking offense, 18 U.S.C. § 924(c)(1). (Id., Doc. No. 1). The probation office also sought the revocation of Defendant's supervised release in both of his earlier federal prosecutions. (WDNC Case No. 3:03CR29, Doc.

-3-

No. 72).

Defendant entered into a plea agreement with the United States and pleaded guilty to the felon-in-possession and drug-trafficking offenses. (WDNC Case No. 3:13CR224, Doc. No. 9 at 1). In exchange, the United States agreed to dismiss the Section 924(c) firearm charge against Defendant. (Id.). Defendant agreed that he was a career offender for purposes of his drug-trafficking offense, and the parties agreed to recommend a sentence at the high end of the range advised by the Sentencing guidelines. (Id. at 3). Defendant also agreed to admit the charged violations of his supervised release and to recommend a sentence of 37 months in prison for those violations, to run consecutively to his sentence in the felon-in-possession and drug-trafficking case. (Id.).

This Court's probation office submitted a presentence report and determined that Defendant was a career offender based on his two prior convictions for Hobbs Act robbery. (Id., Doc. No. 22 at ¶¶ 32, 41–42). Because the offense level generated based on the offense characteristics was higher than the career-offender offense level, the probation office calculated a total offense level of 25, unrelated to Defendant's status as a career offender. (Id. at ¶ 32). Defendant's classification as a career offender, however, increased his criminal-history category from IV to VI. (Id. at ¶ 46).

Based on a total offense level of 25 and a criminal-history category of VI, the Sentencing Guidelines advised a sentence of between 110 and 137 months in prison. (Id. at ¶ 72). Defendant faced a statutory maximum sentence of 120 months for his felon-in-possession offense and a maximum of 60 months in prison for his drug-trafficking offense. (Id. at ¶ 71). This Court sentenced Defendant to 120 months for the felon-in-possession offense, to a concurrent term of

17 months for the drug-trafficking offense, and to a consecutive term of 24 months in prison for the violations of the conditions of his supervised release in this matter, for an aggregate sentence of 144 months in prison. (Id., Doc. No. 24 at 2; WDNC Case No. 3:03CR29, Doc. No. 84 at 2).

Defendant is credited, as of July 2021, with having served 118 months in the Bureau of Prisons. (Gov't Ex. 1). Defendant has received three disciplinary citations while in prison, including a 2015 citation for assaulting without serious injury. (Id.). Defendant has completed 24 educational programs or work assignments. (Id.).

In June of 2021, Defendant submitted a request for compassionate release with the warden of his Bureau of Prisons institution. (Govt. Ex. 2 at 2). The warden denied Defendant's request. (Id. at 1). Defendant asks this Court to grant him home confinement or compassionate release because his mother, who is the primary caregiver of Defendant's 15-year-old son, has suffered three strokes, rendering her unable to care for Defendant's son. (WDNC Case No. 3:03CR29, Doc. 100 at 1–2). The Court previously denied the motion, but the Fourth Circuit has vacated and remanded the motion to this Court for further proceedings. For the following reasons, Defendant's motion is again denied.

**II.     DISCUSSION**

This Court will deny Defendant's motion for home confinement or compassionate release because he has not identified extraordinary and compelling reasons for a reduction in his sentence and the 18 U.S.C. § 3553(a) sentencing considerations weigh against his compassionate release.

Defendant is not eligible for either home confinement or compassionate release. The

-5-

Case 3:03-cr-00029-MOC    Document 115    Filed 10/28/21    Page 5 of 9

Bureau of Prisons has authority under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541 to transfer prisoners to home confinement, subject to certain limitations. In response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. Law No. 116-236 (enacted Mar. 27, 2020), and the United States Attorney General issued memoranda on March 26 and April 3, 2020, directing the Bureau to prioritize the use of home confinement to protect the health and safety of those in the Bureau's custody and expanding its authority to do so.[1] To determine which inmates should be granted home confinement, the Bureau considers the totality of the circumstances for each individual inmate, including, among other factors, the age and vulnerability of the inmate to COVID-19 in the light of guidelines from the Centers for Disease Control and Prevention, the inmate's conduct in prison, and the extent to which the inmate has demonstrated a verifiable re-entry plan that will both maximize public safety and place the inmate at a lower risk of contracting COVID-19 than he is likely to face in a facility operated by the Bureau. *Attorney General's March 26 Memo* 1–2.

The Bureau of Prisons' authority to transfer an inmate to home confinement differs from this Court's authority to grant a motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

---

[1] United States Attorney General, Memorandum (Mar. 26, 2020) (hereinafter Attorney General's March 26 Memo), available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf; United States Attorney General, Memorandum (Apr. 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf.

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before The First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the Bureau of Prisons filed a motion seeking that relief.

Although not binding on this Court, see United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020), the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for compassionate release identified in section 1B1.13 and that a district court may "treat[] as [an] 'extraordinary and compelling reason[]' for compassionate release the severity of the [defendant's] § 924(c) sentences and the extent of the disparity between the [defendant's] sentences and those provided for under the First Step Act." 981 F.3d at 286. The court must make an individualized determination that the defendant has identified an extraordinary and

-7-

Case 3:03-cr-00029-MOC   Document 115   Filed 10/28/21   Page 7 of 9

compelling reason for compassionate release, considering, for example, the length of time already served, any rehabilitative efforts made during the defendant's time in the Bureau of Prisons, the defendant's prior criminal history, and the defendant's age at the time he committed his offenses. See id. Although the Fourth Circuit held in McCoy that courts are not limited to the grounds for compassionate release identified in section 1B1.13, the Fourth Circuit has also recognized that this section remains helpful guidance and may continue to define the health-related circumstances that warrant compassionate release when a defendant files a motion seeking that relief. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021).

Defendant has not alleged that he satisfies any of the criteria for compassionate release authorized in section 1B1.13. Instead, he asks this Court to exercise its discretion to grant him compassionate release because his mother is no longer able to care for Defendant's son. Although Defendant is understandably concerned about his mother and his son, his need for a caregiver for his son is not an extraordinary and compelling reason justifying his compassionate release, and Defendant does not cite any legal authority suggesting that a need for childcare is an extraordinary and compelling reason for compassionate release.

Additionally, the sentencing considerations described in 18 U.S.C. § 3553(a) counsel against any sentence reduction. Defendant has been given multiple opportunities to live outside of the Bureau of Prisons while on supervised release and has repeatedly and consistently violated the law and returned to prison.

Defendant has a history of committed dangerous criminal offenses, and while he has completed some educational and work programs while in the Bureau of Prisons, he has also committed three disciplinary infractions, including an assault. Defendant has not demonstrated

that he is able to comply with Bureau of Prisons rules prohibiting violence and misconduct, let alone laws prohibiting violence and drug trafficking.

Based on Defendant's history and characteristics and the need to protect the public from further crimes, the need to provide just punishment, and the need to deter Defendant and others from engaging in similar criminal activity, his sentence of 144 months is sufficient but not greater than necessary to accomplish the section 3553(a) sentencing objectives.

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 100), is **DENIED**.

Signed: October 28, 2021

Max O. Cogburn Jr
United States District Judge